Filed 1/3/23 Stanley v. The Board of Trustees of the Cal. State University CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JONATHAN WAYNE STANLEY, Plaintiff and Appellant, v. THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY et al., Defendants and Respondents. | F082995 (Super. Ct. No. 20CECG02156) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi C. Kapetan, Judge.

Law Office of Shirin Buckman and Shirin Buckman; The Law Office of Keith Altman and Keith Altman, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Sarah M. Barnes, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Appellant Jonathan Wayne Stanley appeals from a judgment of dismissal entered in favor of respondents The Board of Trustees of the California State University (CSU), Stephanie Ryan, Martin Valencia, Colin Stewart, and Mitzi Lowe (collectively, respondents), and against Stanley after the trial court sustained respondents' demurrer to Stanley's first amended complaint (FAC) without leave to amend. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.      Factual Background**

"In reviewing a judgment of dismissal entered after the sustaining of a demurrer, we accept as true the factual allegations of the [governing] complaint" (*Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1197) and " ' "consider matters which may be judicially noticed." ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) The facts recited below are alleged in Stanley's complaint, or are judicially noticeable. We also set forth some of Stanley's related contentions for context but do not assume the truth of those contentions. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300-301 (*People ex rel. Lungren*).)

During all times relevant, Stanley was enrolled as a student at CSU's campus in Fresno, California.[1] Stanley was a candidate for a master's degree in Art History at CSU, who maintained excellent grades, won two scholarships, and, prior to the events alleged in the FAC, had no history of disciplinary action. Respondents Ryan, Valencia, Stewart, and Lowe (collectively, individual respondents) were employees of CSU.

Ryan, who was serving as the Coordinator of the Art History Master's Program (Master's Program) at the CSU Fresno campus invited Stanley to meet with her and the Master's Program chairperson, Valencia, "to discuss … Stanleys' progress in the [Master's] Program." Stanley accepted the invitation. On January 30, 2019,

---

[1]      For ease of reference we do not distinguish between CSU (i.e., the university), and respondent CSU (i.e., the university's board of trustees).

2.

approximately four months prior to his anticipated graduation from the Master's Program, Stanley met with Ryan and Valencia.

At the January 30, 2019 meeting, Stanley took the opportunity to voice criticisms about the Master's Program. He advised Ryan and Valencia that the Master's Program "engaged in favoritism and that certain students were being unfairly mistreated"; and that " '[he] and other graduate students were not treated equally and/or with human dignity and respect.' " Stanley also "complained that faculty negligently failed to process or file paperwork," delaying his admittance into the Master's Program and his eventual graduation from the program. He further complained he was denied the opportunity to "student teach despite his strong qualifications for the position." Stanley had never previously voiced these complaints to CSU's administration, professors, or staff.

During the meeting, Ryan attempted to prevent Stanley from continuing to voice complaints about a specific professor. At some point, Ryan "exclaimed, 'I don't have to listen to this!' " Valencia requested that she "calm down." On more than one occasion during the meeting, Ryan "would spring out of her chair and cower over … Stanley as he spoke." Valencia "repeatedly asked [Ryan] to sit back down."

Stanley asked Ryan and Valencia to "document his grievances per CSU policy" but Ryan and Valencia refused. Ryan and Valencia told Stanley his "grievances were simply his 'perceptions.' " In response, Stanley identified himself "as an LGBTQ individual" and stated he " 'take[s] matters of mistreatment of others very seriously' and therefore 'would not make such heavy and serious claims and accusations if [he] were not accurately confident of their validity.' "

"After approximately 35-40 minutes … Ryan abruptly stood up and left." Stanley and Valencia continued to talk. Valencia asked Stanley " 'What do you need to succeed and graduate on time? Anything you need, you got it!' " Valencia apologized to Stanley "for any tension in the meeting and for making … Stanley feel 'invalidated' at any point in his matriculation." Valencia promised Stanley "no retaliation would occur for his

3.

voicing of grievances against staff and faculty." Stanley alleged, "[a]t no time [during the meeting] were voices raised, nobody used profanity, and no inappropriate language was used by either [Stanley] or [respondents]."

Three days later, on February 2, 2019, Stanley received two letters from Stewart, who was the Acting Student Conduct Coordinator for the CSU Fresno campus. The letters accused Stanley of "student misconduct" against both Ryan and Valencia, and of using " 'threatening conduct' against them." The letters warned Stanley he could suffer sanctions " 'for violating the Student Conduct Code, including[] Restitution, Loss of Financial Aid, Educational and Remedial Sanctions, Denial of Access to Campus or Persons, Disciplinary Probation, Suspension, and Expulsion.' " Stewart wrote that he "hoped … the matter could be resolved 'without the need for a hearing.' "

On February 11, 2019, Stewart again wrote Stanley. The letter indicated " 'a hold [was] being placed on [Stanley's] academic records prohibiting [him] from performing any registration transactions or releasing [his] records and transcripts' " until such time as he met with Stewart. Stanley "requested an attorney or other type of support professional attend the meeting" but his request was denied. Stanley contended this denial violated CSU policies.

Stanley eventually met with Stewart. At that meeting, Stewart asked Stanley to sign a waiver of Stanley's "right to a hearing." Stanley declined. Stewart had a "pile of paperwork" in front of him which Stanley, presumably sensing it related to the claims against him, asked to see. Stewart denied his request. Stanley then requested Stewart "describe the specific factual claims against him." Stewart declined the request and threatened to expel Stanley if he refused to sign the hearing waiver. Stanley continued in his refusal and stated he "felt uncomfortable and unsafe in another closed-door meeting with … faculty making false accusations against him." When Stewart said there would be " 'consequences' " for Stanley's refusal to sign the hearing waiver, Stanley left the meeting.

4.

A hearing to consider the allegations of student misconduct against Stanley was scheduled for March 15, 2019. Lowe, the Interim Assistant Dean of the College of Health and Human Services, acted as the hearing officer. The hearing was being recorded by a secretary who was also taking notes.

At the hearing, Stanley was presented with a four-page personal statement of Ryan. The statement alleged Stanley " 'looked mean and violent' and that he was 'a violent person on campus.' " Stanley alleged these accusations are without factual basis. Stanley requested a copy of Ryan's statement but his request was denied. He contended this too constituted a violation of CSU policies. Stewart again pressured Stanley to waive his hearing rights but Stanley again declined. Ultimately, Ryan and Valencia came into the hearing room in order to give witness testimony. Stanley had no notice they would be appearing. During the hearing, Ryan "reiterated her claim that she believes … Stanley is a violent person and a danger to the campus in committing an 'act of violence.' "

Valencia was asked whether he could corroborate the claims that Stanley engaged in threatening or violent behavior. Valencia did not confirm the alleged behavior and simply stated Stanley was 'disrespectful.' "

Stanley alleged he was refused an opportunity to "make a rebuttal statement on his behalf" and that he was not permitted to speak. He contended this too violated CSU policy. He further alleged he was not allowed to question the witnesses. In addition, when Stanley began listing the CSU policies he contended were being violated at the hearing, Lowe directed the secretary to stop recording. Stewart and Lowe inquired whether Stanley "was going to proceed with the hearing." Stanley responded that he would not proceed if he was not going to be allowed to question witnesses or present a defense. He further advised he was not going to "sign[] any documents and stood up to leave," at which point Lowe "threatened … Stanley with suspension or expulsion if [he] left." Stanley left the hearing.

On March 25, 2019, Lowe, in her capacity as hearing officer, issued a Hearing Officer's Report (hearing officer's report) to address CSU's claims against Stanley. On March 26, 2019, a final administrative decision in connection with the disciplinary hearing was issued (final administrative decision). We discuss the hearing officer's report and final administrative decision in more detail in later sections of this opinion.

Immediately following the March 15, 2019 hearing, CSU's Office of Student Conduct sent Stanley a letter advising him to make no contact with Ryan or else she will "file a restraining order with the police." The letter also indicated Ryan had already twice provided campus police with Stanley's name and had informed them that Stanley "was violent."

Stanley alleged Ryan had filed a campus police report against him on the day of, and shortly after, his initial meeting with Ryan and Valencia. Stanley alleged that "[a]s a result of the false accusations against him, [his] graduation date was postponed for one year." He also alleged the false allegations "are reflected in his academic record" and that his "goal of being accepted into a Ph.D. program is jeopardized." Stanley alleged he has suffered "damage to his reputation" and "has experienced depression and anxiety" as a result of the false allegations.

## II.   Procedural Background

On June 27, 2019, Stanley filed a notice of claim (GCA claim) with CSU in an effort to comply with the Government Claims Act (Gov. Code, § 810 et seq.). CSU denied the claim on February 21, 2020.

On July 24, 2020, Stanley filed his original complaint against CSU and individual respondents (collectively, respondents) alleging nine causes of action. On November 12, 2020, respondents demurred to Stanley's original complaint.

On January 11, 2021, Stanley filed his FAC against respondents alleging six causes of action. Specifically, Stanley alleged causes of action for (1) violation of his civil rights under section 1983 of title 42 of the United States Code (Section 1983)

(against individual respondents); (2) defamation (against all respondents); (3) abuse of process (against all respondents); (4) negligence (against all respondents); (5) intentional infliction of emotional distress (against all respondents); and (6) equitable and injunctive relief (against CSU).

On February 11, 2021, respondents demurred to the FAC, and each cause of action therein, pursuant to Code of Civil Procedure section 430.10, subdivision (e), i.e., on the ground the pleading did not state facts sufficient to constitute a cause of action. In that regard, respondents demurred to the entire FAC contending Stanley "failed to exhaust his judicial remedies." As to the first cause of action for violation of civil rights (Section 1983), respondents further contended individual respondents were entitled to immunity. As to the second through fifth causes of action for defamation, abuse of process, negligence, and intentional infliction of emotional distress, respondents argued Stanley failed to comply with the Government Claims Act (Gov. Code, § 810 et seq.), the claims were barred by the litigation privilege, and respondents were entitled to immunity. Respondents challenged the sixth cause of action arguing it "is a remedy and not a cause of action." In a concurrent filing, respondents also moved to strike portions of the FAC.

In demurring to the FAC, respondents filed a request for judicial notice of CSU's letter rejecting Stanley's Government Claims Act claim (GCA claim rejection); the hearing officer's report and the CSU's Executive Order 1098 Revised June 23, 2015 (Executive Order 1098), which set the procedures for all student disciplinary matters.

Stanley opposed respondents' demurrer to the FAC and the motion to strike. He also objected to the trial court taking judicial notice of the hearing officer's report. The record does not reflect that Stanley objected to the court taking judicial notice of any other documents.

On March 17, 2021, respondents filed reply briefs in support of their demurrer and motion to strike, and a supplemental request for judicial notice in support of their

7.

demurrer. In their supplemental request, respondents requested the court take judicial notice of the final administrative decision.

On April 21, 2021, the trial court issued its tentative ruling to sustain the demurrer, without leave to amend, as to the entire FAC and each cause of action therein on all grounds asserted in respondent's demurrer. Given this tentative ruling, the court tentatively determined the motion to strike was rendered moot. The trial court indicated it would grant respondents' request for judicial notice.

Stanley did not request oral argument to address the trial court's tentative ruling. Consequently, the ruling became the order of the court. (Cal. Rules of Court, rule 3.1308(a)(1).)

On May 3, 2021, the trial court entered a judgment of dismissal in favor of respondents and against Stanley.

On June 23, 2021, Stanley timely appealed the judgment.

## DISCUSSION

### I. Standard of Review

An appellate court's " 'only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly[,] we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. [Citations.] We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' " (*People ex rel. Lungren*, *supra*, 14 Cal.4th at pp. 300-301.) In addition, we may " ' "consider matters which may be judicially noticed." ' " (*Evans v. City of Berkeley*, *supra*, 38 Cal.4th at p. 6.) " 'We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling.' " (*Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1174.)

8.

**II.    Stanley Does Not Challenge the Trial Court's Decision to Grant Respondents' Request for Judicial Notice and We Likewise Take Judicial Notice of Those Same Documents**

As mentioned, the trial court took judicial notice of the following items:  (1) the hearing officer's report; (2) the GCA claim rejection; (3) Executive Order 1098; and (4) the final administrative decision.  Although Stanley objected to the trial court taking judicial notice of the hearing officer's report, he does not challenge the trial court's decision in this regard on appeal.  Accordingly, that issue is forfeited.  (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 282 [failure to challenge on appeal the trial court's decision to judicially notice matter forfeits the argument]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Issues not raised in an appellant's brief are deemed waived or abandoned."].)

Moreover, we conclude judicial notice of the aforementioned documents is proper and likewise take judicial notice of them.  (Evid. Code, § 452, subd. (c); *Hogen v. Valley Hospital* (1983) 147 Cal.App.3d 119, 125 ["records and files of an administrative board are properly the subject of judicial notice"]; *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1750 [same].)

**III.    Stanley is Foreclosed From Challenging Alleged Procedural Defects in CSU Disciplinary Proceedings Due to His Failure to Exhaust Judicial Remedies**

*A.    Code of Civil Procedure Section 1094.5 Applies to the Final Administrative Order Issued By CSU*

Stanley contends the trial court erred in sustaining the demurrer on the ground he failed to exhaust his judicial remedies by not seeking a writ of mandate from the superior court to challenge CSU's disciplinary hearing or the final administrative decision pursuant to Code of Civil Procedure section 1094.5.  We disagree.

Code of Civil Procedure section 1094.5 provides, in part:

"(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be

9.

taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury….

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subds. (a) & (b).)

"[C]ourts have repeatedly held that administrative writ of mandate provided for in section 1094.5 is the appropriate remedy for the purpose of inquiring into the validity of any final administrative agency decision made as the result of a proceeding which by law requires a hearing, evidence to be considered, and a discretionary determination of fact vested in an inferior tribunal." (*Logan v. Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 123.)

"The doctrine of exhaustion of judicial remedies is invoked where there has been a quasi-judicial adjudication by an administrative tribunal, whether in the public or private context.  It *requires* a party aggrieved by such a decision to petition for relief in mandate in order to challenge the administrative action or findings before filing a legal action so as to prevent the adverse action or findings on issues actually litigated from taking on preclusive effect." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 355 (*Y.K.A. Industries*), emphasis added.)

"Mandamus is available if a hearing is required by statute, an organization's internal rules and regulations, or due process." (*Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1727, fn. 10 (*Pomona College*).)  Mandamus litigation has been held to be the appropriate means for a student to challenge the results of a college's disciplinary proceedings against the student (*Doe v. Westmont College* (2019) 34 Cal.App.5th 622, 634; *Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 239 (*Doe v. U.S.C.*), and to assert related due process challenges (*Doe v. U.S.C.*,

*supra*, at p. 239; *Chevlin v. Los Angeles Community College Dist.* (1989) 212 Cal.App.3d 382, 391(*Chevlin*)).

Here, Executive Order 1098 was promulgated under the authority of California Code of Regulations, title 5, section 41301.[2] By virtue of Executive Order 1098, CSU adopted procedures to "govern all Student disciplinary matters systemwide." Among other things, these procedures provide for the appointment of "one or more persons to serve as Hearing Officers" to conduct hearings on "whether a Student has violated the Student Conduct Code, and [to] prepare[] a report that includes findings and conclusions about whether the Student violated the Student Conduct Code and any recommended sanctions." The procedures adopted by CSU provide for an informal conference between the student conduct administrator and the student who is alleged to have violated the Student Conduct Code. If the matter is not resolved at the informal conference, a notice of hearing is issued, and a hearing is conducted before the hearing officer. The hearing officer is required to make findings of fact and conclusions according to the preponderance of the evidence. The hearing officer's report is then reviewed by the CSU campus president and a final decision is issued by him or her. Thus, CSU's disciplinary process qualifies as a "proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (Code Civ. Proc., § 1094.5, subd. (a).)

---

[2] The California Code of Regulations provides, in part: "The Chancellor [of the CSU] shall adopt procedures to ensure students are afforded appropriate notice and an opportunity to be heard before the University imposes any sanction for a violation of the Student Conduct Code." (Cal. Code Regs., tit. 5, § 41301, subd. (c).) Grounds for student discipline are varied and include "[c]onduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, harassment, or sexual misconduct." (*Id.* at subd. (b)(7).)

**B.** ***Stanley's Contention That CSU Did Not Issue a Final Administrative Order Lacks Merit***

Stanley argues, however, that administrative mandamus "is not applicable to [his] claims because no 'final administrative order or decision' was made at any time by any of the [respondents] as to disciplinary action against [him]." Instead, Stanley argues, there was only a " 'recommendation' for a final decision." Stanley is incorrect. We have taken judicial notice that a final administrative decision did issue on March 26, 2019. The final administrative decision was sent to Stanley by Frank R. Lamas, Ph.D., Vice President for Student Affairs and Enrollment Management. It reads, in part: "I write to inform you, as President Joseph Castro's designee in my role as the Vice President for Student Affairs and Enrollment Management, of the action the University is taking in the disposition of the Hearing that occurred on March 15, 2019 at 9:00 AM. [¶] Pursuant to California State University Executive Order 1098, and after reviewing the Hearing Officer's Report, I have concluded the appropriate sanctions in this case to be: [¶] 1. Disciplinary Probation, effective March 26, 2019 and concluding when you graduate or January 1, 2020, whichever comes first; *disciplinary probation shall remain on your academic transcript until the conclusion of this sanction*. [¶] 2. Required to meet with a counselor at Counseling Services … ; once the session is completed, you must submit written verification of completion of this sanction from your provider to the Office of Student Conduct … no later than December 20, 2019." The final administrative decision goes on to advise Stanley of the consequences should he "be found to have committed a new violation," or if he fails to timely complete the imposed sanctions. The final administrative decision is unambiguous in advising Stanley that a final determination was reached in connection with the hearing. Thus, we conclude there is no merit to Stanley's

12.

contention that CSU did not issue a final administrative decision concerning disciplinary action against him.**3**

Stanley also contends that, because he "walked out of the hearing prior to its completion," "a final decision, without the taking of full evidence, inherently [could not] be issued." Stanley provides no legal authority for this conclusory statement. Notably, Executive Order 1098 provides, in part, "[i]f the Student charged or Complainant fails to appear at the hearing without good cause, the hearing shall nevertheless proceed." Thus, CSU's policy allows completion of the disciplinary process in the event the charged student, after being notified of proceedings against him or her, opts not to participate in the proceedings. In our view, there is no meaningful difference between Stanley failing to appear at the hearing and his leaving in the middle of the hearing. Moreover, we question the propriety of adopting a rule that would allow a party to participate in a hearing and then avoid a potentially adverse final ruling simply by walking out before the hearing is completed.

Regardless, because Stanley provides no legal authority for his contention that a "final decision … inherently [could not] be issued," we consider the argument forfeited. (*City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1326

---

**3**    At oral argument, Stanley's counsel was asked whether he acknowledged issuance of the final administrative decision. In response, Stanley's counsel reiterated his contentions that no such final administrative decision issued and that there was only a recommendation for a final determination by CSU. He further argued that there was only a series of emails between Stanley and CSU administration concerning the results of the hearing which lacked the necessary formality for a final determination.

The final administrative decision, in addition to having been addressed to a post office box (redacted in the record before us), does indicate it was sent to Stanley electronically along with a cover letter which read, in substance, "Attached is a letter from Dr. Lamas, Vice President for Student Affairs and Enrollment Management, regarding your Hearing outcome." Stanley has not provided this court with any authority suggesting the final administrative decision or its method of delivery lacks the necessary formality for a final determination, and we are aware of none.

13.

["When a brief does not contain a legal argument with citation to authority, this court may treat an issue as waived and pass it without consideration."].)

### C. Mandamus Litigation Was the Appropriate and Required Means of Challenging the Fairness of the Disciplinary Proceedings

Stanley cites to *Doe v. U.S.C.*, *supra*, 246 Cal.App.4th 221 for the contention "in order for an administrative mandate to be required, CSU must have given fair notice to … Stanley about the basis for the accusations." Stanley does not provide a pinpoint citation for his contention, and our reading of *Doe v. U.S.C.* does not support the contention. In that case, the fairness of the proceedings and notice given were directly challenged *via a petition for writ of mandate under Code of Civil Procedure section 1094.5*. (*Doe v. U.S.C.*, *supra*, at p. 237.) On appeal, the court held that the petitioner's writ of mandate should have been granted in its entirety. (*Id.* at p. 253.) Thus, *Doe v. U.S.C.* illustrates the propriety (and potential effectiveness) of pursuing relief for such alleged violations through mandamus litigation. *Doe v. U.S.C.* does not stand for the proposition that administrative mandate is not required where an aggrieved party contends he or she was not given fair notice of the charges against him or her.

Contrary to Stanley's contention, Code of Civil Procedure section 1094.5 expressly empowers the trial court to determine challenges as to the fairness of administrative proceedings. It provides, in relevant part: "The inquiry in such a case shall extend to the questions whether respondent has proceeded without, or in excess of, jurisdiction; *whether there was a fair trial*; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b), emphasis added.)

We conclude Stanley was required to pursue relief in mandamus if he wanted to challenge procedural defects in, or the fairness of, CSU's disciplinary process. His

14.

failure to exhaust his judicial remedies bars such challenges. (*Y.K.A. Industries*, *supra*, 174 Cal.App.4th at p. 355; *Chevlin*, *supra*, 212 Cal.App.3d at p. 391).

## IV.   Stanley's Section 1983 Claims Are Barred by Principles of Res Judicata and the Immunity Afforded Respondents

Section 1983 provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." (42 U.S.C.A. § 1983.)

Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " (*Graham v. Connor* (1989) 490 U.S. 386, 393-394.)

### A.   *Res Judicata and its Effect on Stanley's Claims*

Respondents argue on appeal, as they did before the trial court, that "the failure to exhaust judicial remedies is a form of res judicata," that the judgment "is given collateral estoppel effect and becomes binding on later civil actions," and that "[t]his binding effect prevents [Stanley] from … repackaging the same claims in a suit for damages." We agree.

Stanley does not directly address respondents' argument. Stanley does argue, however, that his "claims against … Ryan and Valencia are not specifically aimed at their statements within the disciplinary hearing itself," but rather "are aimed at the following behavior: (1) falsely and maliciously reporting … Stanley to University Officials for 'threatening conduct' and 'violence' following [Ryan's] January 31, 2019 meeting with

15.

… Stanley …[;][4] (2) [m]aliciously sending a false report to University police which characterized him as 'violent'…; and (3) maliciously perpetuating the untruth to [Ryan's] colleagues and other university students." We are unable to discern any allegations in the FAC that any respondent made untruthful or defamatory statements beyond those allegedly made by Ryan to campus police or during the course of the disciplinary process. Moreover, Stanley does not offer a citation to the record in support of his claim. " '[I]f a party fails to support an argument with the necessary citations to the record, … the argument [will be] deemed to have been waived.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

"The doctrine of exhaustion of judicial remedies is invoked where there has been a quasi-judicial adjudication by an administrative tribunal, whether in the public or private context. It requires a party aggrieved by such a decision to petition for relief in mandate in order to challenge the administrative action or findings before filing a legal action *so as to prevent the adverse action or findings on issues actually litigated from taking on preclusive effect*. [Citations.] Once an administrative decision has been issued, 'provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decision[-]making process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. [Citation.] *Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims*.' " (*Y.K.A. Industries*, *supra*, 174 Cal.App.4th at pp. 355-356, emphasis added.)

When the requisite elements of the doctrine have been met, it will "collaterally estop a federal civil rights action," including an action under Section 1983. (*Mola*

---

**4** There is a minor discrepancy in Stanley's FAC. The meeting between Stanley, Ryan and Valencia is alleged elsewhere in the FAC to have occurred on January 30, 2019.

16.

*Development Corp. v. City of Seal Beach* (1997) 57 Cal.App.4th 405, 410 (*Mola*); *Swartzendruber v. City of San Diego* (1992) 3 Cal.App.4th 896, 908-909 (*Swartzendruber*), disapproved on other grounds in *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 72; *McDaniel v. Board of Education* (1996) 44 Cal.App.4th 1618, 1621-1622 (*McDaniel*); *Garcia v. Bostic* (9th Cir. 2020) 818 Fed.Appx. 686, 688-689 (*Garcia*) [applying California law].)

"A prior decision precludes relitigation of an issue under the doctrine of collateral estoppel only if two prongs … are met. First, five threshold requirements must be satisfied: ' "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements." [Citation.]' [Citation.] If all of these threshold requirements of collateral estoppel are met, the analysis determining whether that doctrine applies to give preclusive effect then looks to ' "the public policies underlying the doctrine before concluding that [it] should be applied in a particular setting." ' " (*Y.K.A. Industries*, *supra*, 174 Cal.App.4th at pp. 356-357.)

Here, all five requirements of the first prong are met. The issues Stanley seeks to relitigate in this action are the same as were the subject of the disciplinary proceedings against him—i.e., whether he engaged in conduct that threatened or endangered the health or safety of any person within or related to the University community. The matter was actually litigated at a hearing in which Stanley was present, and participated in before leaving the hearing, and at which evidence was received. (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482 [" 'An issue is actually litigated "[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is

17.

determined" ' " italics omitted].) That Stanley left the hearing does not affect this determination. CSU's policy, as reflected in Executive Order 1098 is to conduct the hearing even if the charged student "fails to appear at the hearing without good cause." As our high court has stated, "[t]he failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel. [Citation.] Even a judgment of default in a civil proceeding is 'res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.' " (*People v. Sims* (1982) 32 Cal.3d 468, 481, superseded by statute on unrelated grounds as noted in *Gikas v. Zolin* (1993) 6 Cal.4th 841, 851.) Moreover, the matter was necessarily decided since it was the basis of the complaint against Stanley, and a final administrative decision on the merits issued. The final requirement is obviously met because Stanley, himself, was a party to both proceedings—i.e., the disciplinary proceedings, and the proceedings before the trial court.

Finally, the second prong is met here. Public policy considerations justify application of the doctrine. Case law has countenanced the application of collateral estoppel to qualifying administrative decisions where the aggrieved party has failed to seek relief in mandamus and subsequently attempts to relitigate those same claims in a Section 1983 cause of action. (*Mola*, *supra*, 57 Cal.App.4th at pp. 411-412; *Swartzendruber*, *supra*, 3 Cal.App.4th at pp. 908-909; *Chevlin*, *supra*, 212 Cal.App.3d at p. 391; *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 646; *McDaniel*, *supra*, 44 Cal.App.4th at pp. 1621-1622; *Garcia*, *supra*, 818 Fed.Appx. at pp. 688-689 [applying California law].) We see no reason to deviate from the practice under the facts of this case.

Lowe, acting as hearing officer, found "[t]he preponderance of evidence presented at the hearing established that: [¶] … Stanley exhibited threatening behavior towards members of the campus community." and that Stanley "violated the following sections

18.

of the Standards for Student Conduct: [¶] (7) Conduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, harassment, or sexual misconduct." (Emphasis omitted.) This was the only grounds of student misconduct alleged against Stanley. Lowe recommended "Disciplinary Probation, concluding when the student graduates or January 1, 2020[,] and; required to see a counselor at Fresno State Counseling and Psychological Services." In its final administrative decision, CSU impliedly adopted the findings contained in the hearing officer's report and expressly adopted the sanctions recommended by Lowe.

Stanley is collaterally estopped from arguing contrary to CSU's findings. The finding that Stanley "exhibited threatening behavior towards members of the campus community" and violated CSU's prohibition of "[c]onduct that threatens or endangers the health or safety of any person within or related to the University community" cannot be challenged by way of a collateral action.

### B. *The Trial Court Correctly Sustained the Demurrer as to Stanley's Section 1983 Claim*

Here, Stanley's FAC alleges respondents "intentionally and maliciously deprived [him] of his property rights in his education under the threat of suspension and expulsion if he did not waive his rights" and "intentionally and maliciously violated [his] right to freedom of speech by retaliating against him for expressing concerns about the unfair practices of faculty and staff by exposing [him] to potential criminal charges … and by denying him the right to examine the evidence against him, question witnesses who falsely accused him, acquire legal representation , or be heard in an impartial hearing. [Respondents] effectively chilled [his] freedom of speech under threat of deprivation of his property right to education, thus denying him the right to defend himself against false charges against him."

19.

Although stated in a non-criminal context, Stanley's claims appear to include a claim of malicious prosecution. Essential elements of a Section 1983 claim for malicious prosecution include " '(1) deprivation of liberty, (2) an absence of probable cause[,] and (3) termination or reversal of the … proceedings by reason of the plaintiff's innocence.' " (*Franklin v. Pocono Ranch Lands Prop. Owners Assn.* (D.Del. 2007) 484 F.Supp.2d 286, 288.)

Here, there was no "absence of probable cause" to initiate disciplinary proceedings against Stanley. His conduct and behavior were established as threatening, and/or endangered the health and/or safety of persons within the CSU community. Stanley is collaterally estopped from contending otherwise. Similarly, there was no termination or reversal of the final administrative decision. Stanley forewent his opportunity to seek termination or reversal by failing to exhaust his judicial remedies.

Moreover, Stanley cannot contend in this suit that he was denied the right to defend himself against false charges. Again, he is collaterally estopped from contending the charges against him were false. The findings against him are preclusive in this litigation.

Stanley also appears to allege a Section 1983 claim based on procedural due process. "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.' " (*Shanks v. Dressel* (9th Cir. 2008) 540 F.3d 1082, 1090.)

Assuming, without deciding, that Stanley had a constitutionally protected liberty or property interest at stake, the allegations of the complaint demonstrate that Stanley did not complete the administrative hearing process and, instead, chose to leave the process midstream. Executive Order 1098 provides, in part: "The Hearing Officer controls the hearing. The Student Conduct Administrator and the Student charged each put on the evidence in their case and may each ask questions of the witnesses in whatever manner

20.

the Hearing Officer deems appropriate." The hearing officer (Lowe) had the authority to permit evidence to be introduced in whatever manner she deemed appropriate. Thus, she could allow adverse witnesses to testify freely, without interruption, before allowing Stanley the opportunity to question them, or before allowing Stanley to testify on his own behalf. Because Stanley abandoned the proceedings midstream, as admitted in his FAC, Stanley cannot now contend he was denied due process.

Stanley's claim that he was repeatedly asked to waive his right to a hearing is not actionable under Section 1983. The allegations in his FAC make clear he declined the request, was never required to waive his right to a hearing, and, in fact, received a hearing. Thus, even assuming without deciding that Stanley was entitled to a hearing on the charges against him under the federal Constitution or federal law, the allegations of his FAC demonstrate he was not denied a hearing.

Stanley contends his right of free speech was chilled. However, the allegations of the FAC demonstrate he was allowed to fully air his grievances to Ryan and Valencia at the January 30, 2019 meeting. Moreover, Stanley has no free speech right to threaten others. "Threats, whether explicit or implicit, are not protected speech." (*United States v. Chatelain* (2nd Cir. 2004) 360 F.3d 114, 125.)

Similarly, Stanley alleges he was retaliated against for exercising his free speech rights. "To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." (*Pinard v. Clatskanie School Dist. 6J* (9th Cir. 2006) 467 F.3d 755, 770.) Stanley's threatening conduct was not a constitutionally protected activity, and this conduct prompted the administrative hearing. Moreover, the hearing adjudicated and conclusively established the threatening nature of Stanley's conduct for purposes of this litigation.

21.

Based on the above considerations, we conclude the trial court did not err in sustaining the demurrer as to Stanley's Section 1983 claims.

## C.    *Respondents Are Entitled to Immunity From Liability*

Stanley contends the trial court "erroneously found that [respondents] are entitled to Absolute Immunity from [Section] 1983, holding that [Stanley] 'has not presented facts sufficient to show that the defendants are not immune from liability under [Section 1983.' "[5] He contends the "holding incorrectly suggests that [Stanley] must overcome a presumption of Absolute Immunity in order to proceed with [his] claims against government officials."

It is true that "[t]he proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." (*Antoine v. Byers & Anderson* (1993) 508 U.S. 429, 432.) Here, however, the FAC and matters subject to judicial notice provide sufficient facts to establish respondents' immunity.

Absolute immunity has been granted "to administrative officials performing functions analogous to those of judges and prosecutors if the following formula is satisfied: (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." (*Horwitz v. State Bd. of Medical Examiners* (1987) 822 F.2d 1508, 1513, citing, generally, *Butz v. Economou* (1978) 438 U.S. 478.) Here, the test is met.

---

[5]    We do not necessarily adopt or reject Stanley's interpretation of the trial court's statement. Whether the court was incorrectly placing the burden on Stanley to demonstrate respondents are not entitled to immunity, or was merely determining whether Stanley should be given an opportunity to amend, is unknown. Our decision does not require us to resolve the issue.

The administrative process at issue is set forth in Executive Order 1098. It provides for Student Conduct Administrators who must "receive appropriate training regarding: (a) the student discipline process (including investigation skills and procedures); (b) the law governing Discrimination, Harassment and Retaliation; (c) Student and witness privacy rights; and, (d) the Family Educational Rights and Privacy Act of 1974." They receive additional annual training concerning a variety of "state and federal laws prohibiting Discrimination, Harassment and Retaliation" and "how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability."

Executive Order 1098 also provides for hearing officers who are trained in the adjudication of student disciplinary matters, and various laws including those concerning discrimination, harassment, and retaliation. It further provides that certain individuals are prohibited from serving as hearing officers, including "Student Conduct Administrators and all persons working under or reporting to them, persons with a conflict of interest in the matter, and percipient witnesses to the events giving rise to the matter."

Complaints regarding a student's alleged misconduct are directed to the Student Conduct Administrator who is charged with "promptly: investigat[ing] each complaint …; determine[ing] whether it is appropriate to charge a Student with violation of the Student Conduct Code" and to consider appropriate sanctions. Executive Order 1098 requires that a conference be scheduled to discuss the charges against the student and requires the Student Conduct Administrator to determine whether the matter is appropriate for resolution without the need for a formal hearing. Absent such a resolution, a notice of hearing is issued.

As mentioned, the hearing officer controls the conduct of proceedings and the Student Conduct Administrator and student "each put on the evidence in their case and may each ask questions of the witnesses in whatever manner the Hearing Officer deems appropriate." As is the case with many administrative hearings, formal rules of evidence

23.

do not apply and the hearing officer may consider "[a]ll information that responsible persons are accustomed to rely upon in the conduct of serious affairs." "Hearsay may be considered and will be given the weight appropriate under all of the circumstances. Unduly repetitive information may be excluded." The hearing officer is charged with "maintaining order during the hearing and makes whatever rulings are necessary to ensure a fair hearing." The hearing is recorded and retained according to CSU's "records/information retention and disposition schedule."

Upon conclusion of the hearing, the hearing officer is required to "make findings of fact and conclusions about whether the Student violated the Student Conduct Code" according to the preponderance of the evidence. The hearing officer is limited to consideration of evidence received at the hearing and may not engage in ex parte communications with the "Student Conduct Administrator, the Complainant, the Student charged, or the witnesses." The hearing officer submits his findings and conclusions to the campus president (or to an authorized vice president) and a final administrative determination is made.

Thereafter, if the student receives an adverse final determination, he or she may seek relief in mandamus to challenge the determination—i.e., "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) If the student claims insufficient evidence supports the determination, the trial court is empowered "to exercise its independent judgment on the evidence." (*Id.* at subd. (c).)

The functions of the hearing officer and Student Conduct Administrator are undoubtedly "similar to those involved in the judicial process" (*Horwitz v. State Bd. of Medical Examiners*, *supra*, 822 F.2d at p. 1513) and, as this case demonstrates, a decision

24.

adverse to the student is likely to be met for a suit in damages. Finally, there are sufficient safeguards in the process to control and protect against unconstitutional conduct.

Stanley contends the respondents are not entitled to absolute immunity because they were not impartial. He contends their employment by CSU precludes their impartiality. We disagree.

Executive Order 1098 contains sufficient safeguards to ensure impartiality of the hearing officer (i.e. Lowe). The hearing officer is trained in such matters, cannot serve if they are under the purview of the Student Conduct Administrator or if they have a conflict of interest, cannot engage in ex parte communications, and is limited to consideration of the evidence produced at the hearing. Moreover, the existence of mandamus relief further protects against an impartial fact finder.

The Student Conduct Administrator (i.e. Stewart) has a sufficiently similar role to that of a prosecutor. He or she is trained in investigations, makes a decision on whether to charge the student and what sanctions to seek, and is charged with presenting evidence in the proceedings.

As for the witnesses (Ryan and Valencia), Stanley's claims against them are premised on his contention that Ryan gave false testimony and/or false accounts to campus police. (Valencia's testimony, as characterized by Stanley in his FAC, was merely that Stanley was "disrespectful.") As mentioned, Stanley is collaterally estopped from contradicting this testimony in the case at bar.

## V.     The Litigation Privilege Bars Stanley's State Law Claims Concerning Statements Made During the CSU Disciplinary Hearing and to Campus Police

Respondents demurred to Stanley's second through fifth causes of action for defamation, abuse of process, negligence, and intentional infliction of emotional distress on several grounds, including that the claims are barred by the "privilege codified as Civil Code section 47, subdivision (b)" (litigation privilege). The trial court agreed. In

its adopted tentative ruling, the court noted that "[w]ith the exception of statements allegedly made by … Ryan to police, the statements made by [individual respondents] were allegedly published as part of the disciplinary hearing process." The court wrote, "the principles of quasi-judicial immunity and the litigation privilege apply to defendants as the hearing officer, prosecutor, and hearing participants.… [T]o the extent [Stanley] may seek a recovery based on the statements Ryan made to the police, such statements would also fall within the litigation privilege." The trial court did not err.

Subject to certain exceptions not relevant here, subdivision (b) of Civil Code section 47 reads, in part: "A privileged publication or broadcast is one made: [¶] …[¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, *or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure*." (Civ. Code, § 47, subd. (b), emphasis added.)

"Civil Code section 47, subdivision (b), 'confers an absolute privilege to communications made as part of a " 'judicial or quasi-judicial proceeding[],' " defined to include any sort of " 'truth-seeking' " or other official proceeding.' [Citation.] ' "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." ' [Citation.] The privilege ' "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." ' " (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 613.) "The privilege is … broadly applied and doubts are resolved in its favor." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 283.)

On appeal, Stanley contends that CSU's disciplinary process is "non-judicial in nature"; that the "Disciplinary Committee … is categorically unable to receive immunity

26.

under [Civil Code section] 47(b)(3) because it is not a government agency or standing administrative body" and is, instead, "an ad hoc collection of university staff gathered for a purpose that did not pertain to their ordinary job duties"; and that the alleged "defamatory statements made by … Ryan were not made within a proceeding protected by [the litigation privilege]." We disagree.

Stanley fails to support the contention that the Disciplinary Committee is not a governmental agency or standing administrative body with any reasoned argument or citations to law or the record. Accordingly, the claim is waived. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."]; *Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, … the argument [will be] deemed to have been waived' "].)

Moreover, Stanley is incorrect on the reach of the litigation privilege. Stanley cites to *Hackethal v. Weissbein* (1979) 24 Cal.3d 55, 59 (*Hackethal*), for his contention that immunity under Civil Code section 47 only applies in connection with proceedings before standing governmental agencies. However, he failed to mention in his brief that *Hackethal* was superseded by statute on that very same issue as recognized in *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 201-203 (*Kibler*). The *Kibler* court recognized that, in response to *Hackethal*, the Legislature enacted subdivision (b) of Civil Code section 47, which provides the litigation privilege is applicable to statements made "in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure]." (*Kibler*, *supra*, 39 Cal.4th at p. 202, fn. 4.)

As discussed, CSU's disciplinary process is subject to review under Code of Civil Procedure section 1094.5, which is contained in Chapter 2 of Title 1 of Part 3 of the Code

of Civil Procedure. Consequently, statements made in connection with CSU's disciplinary process are subject to the litigation privilege. (Civ. Code, § 47, subd. (b).)

The California Supreme Court has "directed that [Civil Code] section 47(b) be applied broadly to bar tort actions based on privileged communications, excepting only the tort of malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 358 (*Hagberg*).) Noting the broad construction given to Civil Code section 47, subdivision (b), our high court wrote:

> "In its application to communications made in a 'judicial proceeding,' section 47(b) is not limited to statements made in a courtroom. Many cases have explained that section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit. [Citation.] As we have said, 'it is late in the day to contend that communications with "some relation" to an anticipated lawsuit are not within the privilege.' [Citation.] Rather, the privilege applies to 'any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom [when] no function of the court or its officers is involved.' " (*Hagberg*, *supra*, 32 Cal.4th at p. 361.)

The litigation privilege has been held to protect "attorneys, judges, jurors, witnesses, and other court personnel from liability arising from communications made during a judicial proceeding." (*Budwin v. American Psychological Assn.* (1994) 24 Cal.App.4th 875, 880.) Even before the enactment of subdivision (b) of Civil Code section 47, case law "established that the absolute privilege is applicable not only to judicial but also to quasi-judicial proceedings and defamatory statements made in both judicial and quasi-judicial proceedings having some relation thereto are absolutely privileged." (*Ascherman v. Natanson* (1972) 23 Cal.App.3d 861, 865, emphasis omitted.) The litigation privilege "in both judicial and quasi-judicial proceedings extends to preliminary conversations and interviews between a prospective witness and an attorney

28.

if they are some way related to or connected with a pending or contemplated action." (*Ibid.*)

In order to give effect to subdivision (b) of Civil Code section 47, the privilege must extend to statements made by witnesses, hearing officers, and individuals charged with prosecuting a claim of student misconduct subject to review under Code of Civil Procedure section 1094.5. Thus, all statements made during the subject disciplinary proceedings were absolutely privileged under California law.

With regard to Ryan's statements to campus police, those statements are likewise absolutely privileged. (*Hagberg*, *supra*, 32 Cal.4th at p. 369 ["communications are privileged under section 47(b) when they are intended to instigate official governmental investigation into wrongdoing, including police investigation"].)

A review of the FAC reveals that all of the statements at issue were made either to the campus police or in connection with the disciplinary proceedings at issue. Accordingly, we conclude all such statements were privileged under Civil Code section 47, subdivision (b).

## VI. Issues Not Challenged on Appeal

Stanley does not challenge on appeal the trial court's demurrer as to his sixth cause of action for equitable and injunctive relief. Moreover, Stanley does not appeal the trial court's decision to deny Stanley leave to amend. Accordingly, as to those issues, the judgment is presumed correct and will not be disturbed on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [lower court's judgment is presumed correct and error must be affirmatively demonstrated].)

## VII. Remaining Issues on Appeal Are Deemed Moot

The trial court further sustained respondents' demurrer on the ground Stanley did not timely file his original complaint following CSU's rejection of his GCA claim as required under the Government Claims Act (Gov. Code, § 810 et seq.). Because we

affirm the judgment of dismissal in its entirety on other grounds raised in respondents' demurrer, we need not address whether Stanley's original complaint was timely filed.

## **DISPOSITION**

The judgment of dismissal is affirmed. Costs on appeal are awarded to respondents CSU, Ryan, Valencia, Stewart and Lowe.


SMITH, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.